**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

November 20, 2023

The Honorable Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  **United States v. Grinin et al., 22-CR-409 (HG)**

Dear Judge Gonzalez:

  Mr. Yermolenko, Mr. Brayman, and Mr. Konoshchenok are currently charged before the Court by indictment in *United States v. Grinin, et al.*, 22-CR-409. Defense counsel jointly submits the instant letter in response to the government's September 21, 2023 motion for a hearing pursuant to the Classified Information Procedures Act (CIPA) and in advance of the *ex parte* hearing set for January 23, 2024.

  In response to the government's September 21, 2023 motion and in anticipation of the parties' *ex parte* conferences pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"), Mr. Yermolenko, Mr. Brayman, and Mr. Konoshchenok submit this letter to assist the Court in navigating the classified information issues that are implicated by the government's bringing of this case. The government has indicated that "this case *may* [] implicate classified information." ECf No. 85 at 3. It is unclear whether the government has identified any "potentially discoverable classified material" to date. However, the relevant framework set forth below is intended to aid the Court in making appropriate determination regarding the disclosure of information that may be classified.

  Set forth below is a brief overview of CIPA, the applicable caselaw, and the Department of Justice policies that govern the prosecutors' responsibility to search for and produce information in possession of other government agencies that may be relevant and helpful to the preparation of the defense. We hope this overview is helpful to frame the issues we expect to present to the Court at the ex parte hearing on January 23, 2024.

  **I.**  **The Classified Information Procedures Act**

  CIPA, codified at 18 U.S.C. App. III, is a set of procedures by which federal district courts rule on pretrial matters concerning the discovery, admissibility and use of classified information in criminal cases. *See United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996). CIPA's fundamental purpose

is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *Id.* As a procedural statute, CIPA neither adds nor detracts from the substantive rights of the defendant or the discovery obligations of the government. *See* U.S. Dep't of Just., Just. Manual § 2054 (2020) available at https://www.justice.gov/archives/jm/criminal-resource-manual-2054-synopsis-classified-information-procedures-act-cipa; *see also United States v. El-Hanafi*, No. S5 10 CR 162 KMW, 2012 WL 603649, at *2 (S.D.N.Y. Feb. 24, 2012) ("CIPA does not expand or restrict established principles of discovery."). To the contrary, the statute provides mechanisms by which the government is able to disclose classified information to the defendant, or cleared defense counsel in the first instance, pursuant to its fundamental discovery obligations.

Under Section 1 of CIPA, "classified information" is defined as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. § App. III § 1(a). "National security" refers to the "national defense and foreign relations of the United States." *Id.* § 1(b). As a member of the United States intelligence community, for example, the Federal Bureau of Investigation has the discretion and authority to classify communications, reports and the fruits of surveillance, among other things, if it makes a determination that the disclosure of such information could cause harm to the national security of the United States. Similarly, the FBI has the authority to declassify information when the interests in disclosing that information, such as the constitutional obligations underlying discovery, outweigh the national security interests in concealing that information. *See* Exec. Order No. 13526, 75 Fed. Reg. 707, (2009).

Section 2 of CIPA provides that "at any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. § App. III § 2. Upon such motion, "the court shall promptly hold a pretrial conference" to establish (1) the timing of requests for discovery, (2) the provision of pretrial notice to the government of the defendant's intention to disclose classified information, pursuant to Section 5 of CIPA, and (3) the initiation of the procedure concerning use, relevance, and admissibility of classified information, pursuant to Section 6 of CIPA. *Id.* To encourage open communication at the Section 2 conference, any statements made by the defendant or his attorney at the conference may not be used against the defendant unless the statement is in writing and signed by the defendant. *Id.*

To protect the sensitivities involved with the handling of classified information, Section 3 provides for the issuance of protective orders governing the disclosure of classified information to the defendant. *See id.* § 3. In contrast to the Court's discretionary authority to issue protective orders under Rule 16(d)(1), Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution." *Pappas*, 94 F.3d at 801. Although the government's motion does not indicate that it has identified "potentially discoverable classified information" thus far, the defendants ask that the Court issue a

protective order to govern any discoverable classified information so that discoverable materials can be disclosed promptly and efficiently.[1]

Section 4, which is in many ways the heart of CIPA, governs the methods of disclosure of classified information by the government to the defendant, pursuant to its constitutional and statutory obligations. *See* 18 U.S.C. § App. III § 4. Section 4 is implicated when the head of the department with control over the matter, and after personal consideration of the matter, invokes the state-secrets privilege to withhold classified information from the defendant in the interests of national security. *Doe v. C.I.A.*, No. 05 CIV. 7939 LTSFM, 2007 WL 30099, at *1 (S.D.N.Y. Jan. 4, 2007); *see also United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008). The state-secrets privilege however is not absolute: it "must—under some circumstances—give way . . . to a criminal defendant's right to present a meaningful defense." *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010). (internal quotations omitted).

Under Section 4, upon a "sufficient showing" by the government, the Court may authorize the government to "delete specified items of classified information from documents to be made available to the defendant . . . , to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. § App. III § 4. The government makes a sufficient showing that such alternatives are warranted through an *ex parte* submission to the Court. *See id; see also United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 109 (2d Cir. 2020). Of critical importance to the fairness of the process, the Court may review, *ex parte* and *in camera*, the classified information at issue to determine whether and in what form the information must be disclosed to the defendant, and whether the government has truly satisfied its discovery obligations. *See, e.g., United States v. Aref*, No. 04 CR 402, 2006 WL 1877142, at *1 (N.D.N.Y. July 6, 2006). To assist the Court in this analysis, the defense will provide the Court with its initial view of the scope of material that will be relevant and helpful in the preparation of the defense at the upcoming conference and will supplement that information as appropriate.

Sections 5 and 6 of CIPA apply when a criminal defendant who already possesses classified information seeks to disclose such information during trial or pretrial proceedings. Section 5 requires a defendant who reasonably intends to disclose or cause the disclosure of classified information to provide timely pretrial notice to the Court and the government. *See* 18 U.S.C. § App. III § 5. Notification must take place "within the time specified by the court, or where no time is specified, within thirty days prior to trial." *Id.* The defendant's notice may be brief but must state "*with particularity*, which items of classified information entrusted to him he reasonably expects will be revealed by his defense in this particular case." *United States v. Schulte*, No. 17-CR-548 (JMF), 2022 WL 1639282, at *1 (S.D.N.Y. May 24, 2022) (emphasis in original).

Following receipt of the Section 5 notice, Section 6 authorizes the government to "request the court to conduct a hearing to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. § App. III § 6(a). The government must give the defendant timely notice of its request for a

---

[1] Additionally, defense counsel asks that the government notify the Court and the defense as soon as possible if they identify any potentially discoverable classified information so that counsel to Mr. Brayman may timely seek clearance.

Section 6(a) hearing and identify in its notice the specific classified information it seeks to preclude from use at trial. *Id.* § 6(b)(1). Section 6 "does not alter the existing standards for determining relevance or admissibility," but rather alters the timing of admissibility rulings and requires them to be made before trial. *Schulte*, 2022 WL 1639282, at *2; *see id.* § 6(a) ("[T]he court shall rule *prior* to the commencement of the relevant proceeding.") (emphasis added).

After hearing arguments of counsel at the Section 6(a) hearing, the Court must state in writing the basis for its admissibility determinations. 18 U.S.C. § App. III § 6(a). If the Court determines that the classified information at issue may not be disclosed or elicited during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal. *Id.* § 6(d). If the Court finds the classified evidence must be disclosed or elicited, the government may move for, and the court may authorize: (1) the substitution of a statement admitting relevant facts that the specific classified information would tend to prove or (2) the substitution of a summary of the classified information. *Id.* § 6(c)(1).

If the Court denies the government's motion for substitution under Section 6(c), the Attorney General may file an affidavit effectively prohibiting use of the classified information. *See id.* § 6(e)(1). Upon receipt of the affidavit, the Court may impose a sanction against the government to compensate for defendant's inability to disclose the information in his defense. *Id.* Sanctions may include the dismissal of specific counts, a finding against the government on an issue to which the classified information relates, striking or precluding testimony of a witness, or dismissal of the indictment in its entirety. *Id.* § 6(e)(2).

If needed, Section 7 provides for an expedited interlocutory appeal by the government of any court order "authorizing the disclosure of classified information, imposing sanctions for nondisclosure of classified information, or refusing a protective order sought by the United States to prevent the disclosure of classified information." *Id.* § 7(a). It is the Department's policy, as a matter of fairness, that the government give timely notice to the defendant of an appeal under Section 7. *See* U.S. Dep't of Just., Just. Manual § 2054 (2020) available at https://www.justice.gov/archives/jm/criminal-resource-manual-2054-synopsis-classified-information-procedures-act-cipa.

Section 8 prescribes additional procedures governing the introduction of classified information into evidence. 18 U.S.C. § App. III § 8. For example, Section 8(a) allows the parties to enter classified information into evidence at trial without change in its classification status and leaves the decision to declassify such information to the classifying agency. *Id.* § 8(a). Section 8(b) authorizes the court to admit only part of a document containing classified information into evidence when fairness does not require the whole document to be considered. *Id.* § 8(b). Finally, Section 8(c) provides specific procedures to address lines of questioning that elicit classified information from a testifying witness. *Id.* § 8(b). In this scenario, the government must object to the line of questioning, and the Court must determine whether the witness' answer will compromise classified information. *Id.*

In sum, CIPA provides procedures by which both the government and the defendant may make use of classified information in a criminal case. It expressly contemplates the government's obligation to disclose classified information to the defendant and the defendant's subsequent use of classified information at trial.

## II. The Government's Discovery Obligations

As the Court is aware, the defendants are entitled to several basic categories of discoverable material from the government, including Rule 16 material, exculpatory material under *Brady v. Maryland* and its progeny and, of equal importance, impeachment material under *Giglio v. United States*. In addition, it is fundamental to the defendants' right to cross-examine witnesses that he be given prior statements of witnesses that are relevant to the subject matter of their testimony, pursuant to the Jencks Act, 18 U.S.C. § 3500. As expressly provided by CIPA, the fact that discoverable information may be classified does not relieve the government of its obligation to disclose the material to the defendant. *See United States v. Poindexter*, 725 F. Supp. 13, 32 (D.D.C. 1989) ("[T]he protection of the rights of the defendant is paramount under the statutory scheme.").

As an initial matter, it is well settled that, to satisfy its obligations, the government has a duty to search at least the files within the prosecutor's own office for evidence that is material and favorable to the defense. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). In addition, the government's duty to search for Brady material extends to other agencies acting on the government's behalf in a case, even if the prosecutor has no personal knowledge of the existence of such material. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). In such cases, "[k]nowledge of material information may be imputed to the prosecutor when that information is possessed by others on the prosecution team." *United States v. Velissaris*, No. 22 Cr. 105 (DLC), 2022 WL 2392360, at *1 (S.D.N.Y. July 3, 2022) (internal quotations omitted).

Courts have held that the government must conduct a search if the defendant has made an explicit request for files and there is a non-trivial prospect that the examination of those files might yield material exculpatory information. *See Brooks*, 966 F.2d at 1504. Even absent an explicit request, a prosecutor is nevertheless required to search if there exists any reliable indication suggesting that files contain evidence that meets the *Brady* standard of materiality. See U.S. Dep't of Just., Just. Manual § 2052(B)(1) (2020), available at https://www.justice.gov/archives/jm/criminal-resource-manual2052-contacts-intelligence-community-regarding-criminal-investigations ("Just. Manual"); *see also Kyles*, 514 U.S. at 433 ("[R]egardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.") (internal quotations omitted).

Moreover, a wealth of caselaw *and the Department's own policy* acknowledge that the government's discovery obligations often implicate classified information in possession of the broader United States Intelligence Community ("IC") and directs prosecutors to conduct a prudential search for such information that is relevant and helpful to the defense. *See* U.S. Dep't of Just., Just. Manual § 2052 (2020), available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations. Even where the IC had no active involvement in the criminal investigation, the government's search "must extend to sources that are readily available to the government and that, because of the known facts and nature of the case, should be searched as a function of fairness to the defendant." *Id.* § 2052(B)(2). The Second Circuit has

adopted a lesser standard than *Brady* in cases involving classified information in the possession of the IC, requiring disclosure of information that is "relevant and helpful" to the defense. *Aref*, 533 F.3d at 80 ("[I]nformation can be helpful without being 'favorable' in the *Brady* sense.").

Further, certain types of cases are especially likely to present issues related to national security and/or classified information, and thus require a prosecutor to search IC files for discoverable information. Cases, such as this one, involving alleged violations of the International Emergency Economic Powers Act ("IEEPA") implicate these concerns. *See* U.S. Dep't of Just., Just. Manual § 2052(B)(2) available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations; *see also United States v. Chichakli*, No. S3 09CR1002, 2014 WL 5369424, at *2 (S.D.N.Y. Oct. 16, 2014) (discussing disclosure of potentially discoverable classified materials in an alleged IEEPA conspiracy); *United States v. Libby*, 429 F. Supp. 2d 1, 4 (D.D.C. 2006) (requiring search of classified materials in possession of the White House and CIA in case against the former Assistant to the Vice President for National Security Affairs).

Here, there is far more than a trivial prospect, and in fact there is a high likelihood if not certainty, that the IC possesses information that is relevant and helpful to the preparation of the defense. The indictment charges violations of IEEPA and ECRA based on an alleged "clandestine effort under the direction of Russia's intelligence services to illegally obtain military and dual use technology for the Russian government" over the course of several years. It is reasonable to assume that Mr. Yermolenko, Mr. Brayman, Mr. Konoschenok, and other co-defendants may have been the targets of surveillance by the United States during the relevant time frame. The nature of these charges strongly suggests that that the IC, including but not limited to the FBI, possesses additional classified information that is relevant and helpful to the preparation of the defense. Accordingly, the government has a duty to search for such information and disclose it to the defense pursuant to the procedures established by CIPA, and to satisfy the Court that it has done so in a manner that is sufficient to satisfy its constitutional obligations.

### III.    The Court's Evaluation of Classified Information

When evaluating the government's arguments with respect to the appropriateness of withholding, deleting, or altering of any particular piece of classified information, the Court should place "itself 'in the shoes of defense counsel, the very ones that cannot see the classified record,' to determine whether the withheld data might be relevant and helpful to the defense." *United States v. Schulte*, No. 17 Cr. 548 (PAC), 2019 WL 3764662, at *1 (S.D.N.Y. July 22, 2019) (quoting *United States v. Amawi*, 695 F.3d 457, 471 (6th Cir. 2012)). An opportunity for defense counsel to explain potential defense theories to the Court in an ex parte session enhances the Court's ability to balance the defendant's rights with the government's claimed need to protect national security. That is why courts in this District routinely hold ex parte Section 2 conferences with defense counsel when classified information and CIPA are involved. *See, e.g., Schulte*, 2019 WL 3764662, at *1 (noting that the Court "met ex parte with defense counsel to learn about [the defendant's] defense and discovery needs); *United States v. McGonigal*, 23-CR-16 (JHR) (ECF No. 33) (S.D.N.Y. Mar. 3, 2023) (granting separate ex parte CIPA conferences to government and defense); *United States v. Hossain*, No. 19-CR-606 (SHS),

2023 WL 3001464, at *1 (S.D.N.Y. Apr. 19, 2023) (noting that the Court held "separate ex parte Section 2 hearings with the Government and with defense counsel" in connection with disputes over production of classified information).

Defense counsel looks forward to the opportunity to present their theories of defense to the Court at the ex parte conference set for January 23, 2024, and appreciates the Court's careful evaluation of the government's Section 4 motion pursuant to the CIPA framework set forth above.

Thank you for your consideration.

Respectfully Submitted,

*/s/ Nora K. Hirozawa*
Nora K. Hirozawa
Earl Kirkland
Counsel to Vadim Yermolenko
Federal Defenders of New York, Inc.

*/s/ Michael K. Fee*
Michael K. Fee
David G. Lazarus
Counsel to Alexey Brayman
Verrill Dana LLP


*/s/ Sabrina Shroff*
Sabrina Shroff
Counsel to Vadim Konoshchenok


cc:   AUSA Artie McConnell
      AUSA Craig Heeren
      AUSA Matthew Skurnik