**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:ADR/MS
F. #2019R01707

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 14, 2025

By ECF

The Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Alexey Brayman
Criminal Docket No. 22-409 (S-2) (HG)

Dear Judge Gonzalez:

The government respectfully submits this letter in advance of sentencing of defendant Alexey Brayman, currently scheduled for August 21, 2025, at 11:00 a.m. On August 27, 2024, Brayman pled guilty to conspiracy to defraud the United States, in violation of Title 18 United States Code, Section 371, for his part in a global procurement and money laundering network operated on behalf of the Russian government, which included the smuggling of dual-use electronics, military-grade tactical ammunition, and other export-controlled items. The government requests that the Court impose sentence in light of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") and the factors set forth in Title 18, United States Code, Section 3553(a).

## I. Offense Conduct

The defendant's conduct is detailed in the Probation Department's ("Probation's") Presentence Investigation Report ("PSR"), dated February 28, 2025, and in the second superseding indictment in this case, *see* ECF Dkt. No. 52 (the "Indictment").

### A. The Serniya Procurement Network

Serniya Engineering ("Serniya") was a wholesale machinery and equipment company based in Moscow, Russia. Serniya headed an illicit procurement network operating under the direction of Russia's intelligence services (collectively, the "Serniya Network"), which evaded U.S. and Western sanctions to acquire sensitive military grade and dual use technologies, including advanced semiconductors, for the Russian military, defense sector and research

institutions. PSR ¶ 5. The Serniya Network's clients included, among others: State Corporation Rostec, the state-owned defense conglomerate; State Atomic Energy Corporation Rosatom; JSC Rusnano, the state-owned nanotechnology company; the National Research Nuclear University of the Moscow Engineering Physics Institute; the Ministry of Defense; the Foreign Intelligence Service; and various components of the Federal Security Service ("FSB"), Russia's principal security agency and the main successor agency to the Soviet Union's KGB, including the Department of Military Counterintelligence and the Directorate for Scientific and Technological Intelligence, commonly known as "Directorate T." *Id.*

Sertal was a wholesale machinery and equipment company based in Moscow, Russia. Sertal operated within the Serniya Network and in turn utilized a network of front companies, shell entities and bank accounts throughout the world, including in the United States, to source, purchase and ship export-controlled items from the U.S. to Russia. *See* Indictment ¶ 2. Sertal was an FSB-accredited contractor authorized to conduct highly sensitive and classified procurement activities. PSR ¶ 6.

In March 2022, Serniya and Sertal were added to the U.S. Department of Commerce ("DOC") Bureau of Industry and Security ("BIS") Entity List (the "Entity List"), found at Title 15, Code of Federal Regulations, part 774, Supplement Number 4. PSR ¶ 7. The Entity List imposes license requirements and export restrictions on entities determined to have engaged in activities contrary to U.S. national security or foreign policy interests. BIS added Serniya and Sertal to the Entity List because of their relationship to the Russian government and in response to Russia's invasion of Ukraine beginning in February 2022. *Id.* Specifically, BIS indicated that Serniya, Sertal and other entities were sanctioned because they "have been involved in, contributed to, or otherwise supported the Russian security services, military and defense sectors, and military and/or defense research and development efforts." 87 Fed. Reg. 13141. BIS adopted a "policy of denial" with respect to Serniya and Sertal, indicating that BIS would not authorize a license to export items to Serniya or Sertal. *See* Indictment ¶ 4.

Later in March 2022, pursuant to Executive Order 14024, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Serniya, Sertal and several other entities and individuals in the Serniya Network and added them to the list of Specially Designated Nationals and Blocked Persons (the "SDN List"). PSR ¶ 7. According to OFAC's press release, the designation was part of "its crackdown on the Kremlin's sanctions evasion networks and technology companies, which are instrumental to the Russian Federation's war machine." *See* Indictment ¶ 5.

B. The Criminal Scheme

From at least 2017 through 2023, Yevgeniy Grinin (a Russian national who resided in Russia), Boris Livshits (a Russian national who resided in Russia and previously lived in Brooklyn, New York), Vadim Konoshchenok (a Russian national who resided in Estonia), Vadim Yermolenko (a U.S. citizen who resided in New Jersey), the defendant (a U.S. lawful permanent resident who resided in New Hampshire), and several other co-conspirators in the Serniya Network unlawfully sourced, purchased and shipped millions of dollars in military and sensitive dual-use technologies from U.S. manufacturers and vendors located in the Eastern District of New York and elsewhere (collectively, the "U.S. Companies") for Russian end users, in violation of sanctions

and export control laws and other U.S. criminal statutes. PSR ¶¶ 8-15, 26. These items included tens of thousands of rounds of ammunition suitable for military uses, as well as advanced electronics and sophisticated testing equipment used in quantum computing, hypersonic and nuclear weapons development and other military and space-based military applications. *Id.* ¶ 26.

To effectuate the scheme, the defendant and his co-conspirators made and caused to be made material misrepresentations and omissions, both orally and in writing, with respect to invoices, end use statements, financial records and shipping documents, among other items, to conceal the nature of these illicit procurement transactions. *See* Indictment ¶ 28. By doing so, they caused the U.S. Companies to sell and export sensitive military and dual-use items in violation of sanctions laws and other U.S. laws and regulations; process and accept payments in furtherance of such illicit transactions; and fail to file documents with the DOC, BIS and other U.S. government entities, including license applications and required statements regarding the ultimate consignee and purchaser. The members of the conspiracy also caused U.S. financial institutions to process millions of dollar-based payments in violation of U.S. laws and regulations.

To purchase and export items from the U.S. Companies, the defendant's co-conspirators routed and layered transactions through a variety of front companies and bank accounts located in jurisdictions throughout the world. PSR ¶ 27. Specifically, items were shipped from the U.S. Companies to various locations in the United States and Europe that corresponded to addresses registered to shell companies controlled by the Serniya Network. Items were repackaged and reshipped to several intermediate locations in Europe and Asia before arriving in Russia. Common transshipment points included locations in Estonia, Finland, Germany, the Netherlands and Hong Kong. *Id.* Payments were also layered, with money being transferred to accounts in the names of shell companies held at different banks in jurisdictions throughout the world before the items eventually arrived in Russia. Additionally, shipping documents understated the value of the exports from the U.S. to avoid applicable reporting requirements, thereby avoiding scrutiny. Thus, the conspirators disguised the audit trail of shipments and payments and concealed the true Russian end users for items purchased from the U.S. Companies. *Id.*

The defendant and Yermolenko assisted Livshits in unlawfully exporting dual-use and controlled items from the United States. PSR ¶ 38. Specifically, Yermolenko shipped packages to the defendant at the defendant's New Hampshire residence, which was a frequent transshipment point for items that were unlawfully exported from the United States to Russia. Additionally, while acting under Livshits' direction, the defendant and Yermolenko altered or destroyed shipping documents and other business records, as well as facilitated payments in furtherance of illicit transactions. *Id.* The defendant made at least four shipments of sensitive electronic test equipment and other dual-use items from his New Hampshire residence to Russia after Sertal and Serniya were added to the SDN list. *Id.* ¶¶ 39-41. The equipment in the shipments was controlled by the DOC and included oscilloscopes, signal generators and multimeters. *Id.* In 2019 and 2020, the defendant's co-conspirators purchased sophisticated test equipment from a U.S. laboratory device and components manufacturer and used the defendant to transship the items from his New Hampshire residence through Germany to a Russian end user, a research facility that collaborated with Russia's defense sector. *Id.* ¶¶ 42-43. In early 2022, the defendant's co-conspirators purchased a military-grade spectrum analyzer from another U.S.-based company, which could be used to measure electromagnetic signals on the battlefield or for countersurveillance operations and was controlled by the DOC for anti-terrorism reasons. The

item was shipped through the defendant's New Hampshire residence to a location in Germany used by the Serniya network as a transshipment point. *Id.* ¶¶ 44-46. In September 2022, the defendant sent a package from his New Hampshire residence to Konoshchenok at an address in Tallinn, Estonia. The invoice described the contents as a "Prototype Development Board with Case," manufactured by a U.S. software company and controlled by the DOC for anti-terrorism reasons. *Id.* ¶ 14.

The defendant had extensive communications with Livshits about the scheme. During one conversation in February 2022, Livshits instructed the defendant to photograph the contents of a shipment and dispose of any "financial papers." *See* Indictment ¶ 43. In another conversation in May 2022, Livshits instructed the defendant to dispose of the "certificate of origin" before shipping a package. In a March 2022 communication, the defendant and Livshits discussed sending items to Russia through Germany "by hook or by crook." *See id.*

## II. Procedural History

On May 22, 2023, a grand jury in this District returned the Indictment against the defendant, Grinin, Livshits, Konoshchenok, Yermolenko and others. The defendant was charged with the following crimes: (1) conspiracy to defraud the United States by impeding the lawful functions of OFAC and BIS, in violation of 18 U.S.C. § 371 (Count One); (2) bank fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count Three); (3) wire fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count Four); (4) money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Nine); (5) conspiracy to violate the Export Control Reform Act, in violation of 50 U.S.C. § 4819 (Count Fourteen); (6) smuggling goods from the United States, in violation of 18 U.S.C. § 554(a) (Count Fifteen); and (7) failure to file electronic export information, in violation of 13 U.S.C. § 305(a)(1) (Count Sixteen).[1] On August 27, 2024, the defendant pled guilty before Your Honor to Count One of the Indictment. PSR ¶ 1.

## III. Guidelines Calculation

The government agrees with Probation's calculation of the defendant's offense level in the PSR as set forth below:

Count One: Conspiracy to Defraud the United States

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2C1.1(c)(1), 2M5.1(a)(1)(A)) | 26 |
| Less: Minor Role Adjustment (U.S.S.G. § 3B1.2(b)) | -2 |
| Less: Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a), (b)) | -3 |

[1] Paragraph 2 of the PSR mistakenly omits that the defendant was charged in Count Sixteen and should be amended accordingly.

| | | |
|---|---|---|
| Less: | Adjustment for Zero-Point Offenders (U.S.S.G. § 4C1.1) | -2 |
| Total: | | 19 |

PSR ¶¶ 64-74. Because the defendant is in Criminal History Category I, the resulting Guidelines range calculated in the PSR is 30 to 37 months' imprisonment. *Id.* ¶ 107.

IV. Sentencing Analysis

The government respectfully requests that the Court consider the defendant's Guidelines calculation and the 18 U.S.C. § 3553(a) factors in imposing sentence in this case.[2]

The nature and circumstances of the defendant's offense were serious. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). The defendant played a critical role in a yearslong scheme to illegally obtain millions of dollars' worth of military and other sensitive technologies from American companies and ship them overseas to Russia. These included everything from sniper bullets to advanced electronics used in developing nuclear weapons. The defendant and his co-conspirators, who were spread across multiple countries, used lies and deception to obtain and deliver these items to the Russian government, including military and intelligence agencies. In doing so, the defendant and his co-conspirators skirted laws that were designed to protect our national security. The victims of his conduct were thus not only the American companies and banks who were tricked into enabling the illegal export scheme through repeated misrepresentations and omissions, but also American citizens more broadly, as well as the people of Ukraine and elsewhere who have suffered at the hands of the Russian war apparatus.

Moreover, the defendant's crime was one of greed and not one of need. The defendant was raised in a supportive family environment and his parents, wife and children are all in good health. PSR ¶¶ 82-84. The defendant's wife owns and operates a retail business at which the defendant has also been employed, and they share significant assets (including a home and rental property) and no significant debt. *Id.* ¶ 84, 103. He has enjoyed greater privileges than many defendants who have come before this Court and he made an active decision to attempt to enrich himself by disregarding the law. As the defendant himself admitted in his statement to Probation, even after he definitively knew that items he was shipping were being sent to Russian end-users, he continued to actively participate in the conspiracy. *Id.* ¶ 63. He knew his conduct was wrong and he had a chance to change his behavior; he declined to do so.

The defendant's sentence should promote respect for the law and provide just punishment for a significant affront to the national security of this country. 18 U.S.C.

[2] In connection with his plea, the defendant has also agreed to pay a forfeiture money judgment of $6,000. PSR ¶ 116.

§ 3553(a)(2)(A). By engaging in continued criminal activity for Russia, the defendant has shown a disregard for the law and for the consequences of his actions.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Andrew D. Reich
Matthew Skurnik
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (HG) (by ECF and E-mail)
Counsel of Record (by ECF and E-mail)
United States Probation Officer (by E-mail)